UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ADRIAN KING,

                              Petitioner               DECISION AND ORDER

-vs-
                                                       05-CV-6564 CJS
UNITED STATES OF AMERICA,                              04-CR-6002

                              Respondent

_____

INTRODUCTION

Now before the Court is the *pro se* petitioner's application to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth

below, the application is denied.

28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of
Congress claiming the right to be released upon the ground that the
sentence was imposed in violation of the Constitution or laws of the
United States, or that the court was without jurisdiction to impose such
sentence, or that the sentence was in excess of the maximum authorized
by law, or is otherwise subject to collateral attack, may move the court
which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  "[A] collateral attack on a final judgment in a federal criminal case

is generally available under § 2255 only for a constitutional error, a lack of jurisdiction

in the sentencing court, or an error of law or fact that constitutes a fundamental defect

which inherently results in a complete miscarriage of justice." *U.S. v. Bokun*, 73 F.3d

8, 12 (2d Cir. 1995) (citation omitted).   The Court may dismiss a section 2255

petition without conducting a hearing if the petition and the record "conclusively

show" that petitioner is not entitled to relief. 28 U.S.C. § 2255.   As will be seen

below, petitioner's arguments and submissions do not merit an evidentiary hearing.

BACKGROUND

The facts of this case were accurately set forth in Respondent's Response [#52]

and Supplemental Response [#53] in this action, and need not be repeated in their

entirety.   For purposes of the instant Decision and Order, it is sufficient to note the

following facts.   In late June 2005, members of the Rochester Police Department used

confidential informants to make purchases of marijuana from the downstairs apartment

at 40 High Street ("the apartment") in the City of Rochester.   On July 5, 2001,

members of the Rochester Police Department executed a search warrant at the

apartment.   During the search police seized marijuana, a safe, a $20 bill in a kitchen

drawer, and a firearm.   Following the execution of the search warrant, the police

searched petitioner, who was present in the apartment, and found on his person

marijuana, as well as $500 in U.S. currency.   According to police, petitioner made a

statement to them that he had purchased the safe, and that he was aware of the $20

bill found in the kitchen drawer.   During booking, petitioner also reportedly told police

that 40 High Street was his residence.

Petitioner was indicted in case number 04-CR-6002 for violating 18 U.S.C. §

924(c)(1) (possessing a firearm in furtherance of a drug-trafficking crime) and 21

U.S.C. § § 841(a)(1) and 841(b)(1)(D) (possessing with intent to distribute marijuana). Petitioner was represented by Robert G. Smith, Esq. ("Smith"), Assistant United States Public Defender.   Smith filed pre-trial motions, in which he sought, *inter alia*, to suppress the search and seizure of petitioner's person following the execution of the search warrant, as well as the statements petitioner allegedly made to the police. Smith also filed a motion seeking the disclosure of the identities of confidential informants.  Following a hearing held on May 14, 2004, the Court granted petitioner's motion to suppress petitioner's statements concerning pedigree information in the government's case, but otherwise denied the application.

Petitioner's jury trial on indictment 04-CR-6002 began on May 24, 2004.  At the close of the government's case, Smith moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.   The Court denied the application.  Petitioner testified at trial.  On May 27, 2004, the jury returned a verdict of guilty on both counts of the indictment.

Subsequently, on July 27, 2004, petitioner was charged in Indictment Number 04-CR-6054 with violations of 18 U.S.C. § 371 (conspiracy to commit offenses against the U.S.) and 18 U.S.C. § 922(a)(1)(A) (unlawfully engaging in the business of dealing firearms).  Smith was assigned to represent petitioner on these charges.

Prior to sentencing in case 04-CR-6002, petitioner dismissed Smith as his attorney and retained new counsel, Louis Pilato, Esq. ("Pilato").  However, as Pilato indicated in an appearance before the Court on September 24, 2004, he was not

retained to represent petitioner as to Indictment No. 04-CR-6054, but rather, Smith

was continuing to represent petitioner in that case.

On October 25, 2004, in case 04-CR-6002, the Court sentenced petitioner to,

*inter alia*, 60 months imprisonment on Count 1 of the indictment, and one (1) month

imprisonment on Count 2, to be served consecutively to the sentence on Count 1.

Pilato subsequently filed a Notice of Appeal on November 3, 2004.

On November 16, 2004, petitioner and the Government entered into a plea

agreement in case 04-CR-6054.  In the agreement, petitioner agreed to plead guilty to

violating 18 U.S.C. § 922(a)(1)(A), in order to receive a sentence of not more than 33

months imprisonment.  Moreover, petitioner agreed to withdraw his appeal in case 04-

CV-6002, and to waive his right to appeal or collaterally attack his convictions or

sentences in case 04-CR-6002 and case 04-CR-6054.  Specifically as to the instant

case, the plea agreement stated, in relevant part:

> The defendant further agrees to knowingly waive appeal, modify
> pursuant to Title 18, United States Code, Section 3582(c)(2) and
> collaterally attack the conviction and sentence of 61 months imposed by
> the court in the case of <u>Unites States v. Adrian King</u> 04-CR-6002 CJS.
> Upon sentencing, the defendant and counsel shall discontinue the appeal
> in the case of <u>United States v. Adrian King</u> 04-CR-6002 CJS.

(04-CR-6054, Plea Agreement pp. 11-12).  The plea agreement, which the Court

observed petitioner sign, further stated:

> I have read this agreement, which consists of 16 pages.  I have had a full
> opportunity to discuss this agreement with my attorney, Robert G. Smith,
> Esq.  I agree that it represents the total agreement reached between
> myself and the government.  No promises or representations have been
> made to me other than what is contained in this agreement.  I understand

all of the consequences of my plea of guilty.  I fully agree with the contents of this agreement.  I am signing this agreement voluntarily and of my own free will.

(*Id*. at 16).   Both Smith and Pilato were present in court during petitioner's plea colloquy.

At the time of the plea agreement in case 04-CR-6054, the Court conducted an extensive plea colloquy, some relevant portions of which are set forth below:

THE COURT: How old are you?

THE DEFENDANT: 29.

THE COURT: And how far did you go in school?

THE DEFENDANT: Graduated from high school and two years of college.

* * *

THE COURT: In connection with your decision to plead guilty to this charge, have you had a chance to go over with Mr. Smith the government's case against you, the evidence they would produce against you?

THE DEFENDANT: Yes, sir.

THE COURT: And have you discussed what might happen if you went to trial?

THE DEFENDANT: Yes, sir.

THE COURT: Would it be fair, based on your discussions with Mr. Smith about the government's case against you and what might happen if you went to trial, you believe entering into this plea agreement in pleading guilty to this charge which is engaging in the business of dealing firearms without a license pursuant to the plea agreement is in you best interest?

THE DEFENDANT: Yes, it is, sir.

THE COURT: With respect to the plea agreement itself, have you had occasion to go over with Mr. Smith all the terms and conditions?

THE DEFENDANT: Yes, sir.

THE COURT: He answered any questions you had?

THE DEFENDANT: Yes.

THE COURT: And have you read the agreement yourself?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with Mr. Smith's advice and representation?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: Have you conferred with Mr. Pilato about the waiver of appeal that's incorporated in the plea agreement as it pertains to the case he is representing you on?

THE DEFENDANT: Yes, he did explain.

* * *

THE COURT: The Court has observed Mr. King sign the agreement and the Court finds that based on him signing the agreement and based on answers he has given to questions put to him by the Court, that the plea is being entered knowingly, intelligently and voluntarily and the Court has witnessed Mr. Smith and Mr. Pilato witness the agreement.

(Plea Transcript, 04-CR-6054 [#77] pp. 3, 4-5, 12).

The Court sentenced petitioner in case 04-CV-6054 on February 24, 2005, to, *inter alia*, a term of imprisonment of 30 months (three months below the term set forth in the plea agreement), to run consecutively to the sentence of 61 months imposed in case 02-CV-6002.  At that time, petitioner, along with both of his attorneys, signed a stipulation withdrawing his appeal in case 04-CV-6002.  At sentencing, the Court also reiterated that, as part of the plea agreement, petitioner had waived his right to appeal or collaterally attack his conviction and sentence in case 04-CR-6002:

6

THE COURT: Now, since this sentence is in accord with the written plea agreement, you have waived your right to appeal the sentence I imposed in this case.   Additionally, as noted in paragraph 22 of the plea agreement, you further have waived your right to appeal, modify, or collaterally attack the sentence of 61 months imposed by this Court in the matter of United States v. Adrian King, 04 CR 6002.  To the extent any appeal has been filed in that case, by the terms and conditions of this plea agreement, [it] must necessarily be discontinued.  Are there any charges that need to be dismissed?

MS. BABB: First, I would like the defendant to sign the stipulation and counsel to sign the stipulation with regard to the appeal in case 04-CR-6002.

THE COURT: Yes.  For the record, the Court is observing Mr. King sign the decision [sic] and is observing Mr. Fero [appearing for Pilato] sign it on behalf of Mr. Pilato.  The Court notes that [it] is exactly in accordance with the term[s] of the written plea agreement.  In other words, this ends everything, Mr. King.  You know that?

THE DEFENDANT: Yes.  I'm glad.  Yes.  Thank you, sir.

(Sentencing Transcript, 04-CR-6054, pp. 12-13).

Despite the foregoing, petitioner filed the subject motion pursuant to 28 U.S.C. § 2255 on October 26, 2005.  In his application, petitioner contends that Smith provided ineffective assistance of counsel, because he: 1) failed to properly investigate petitioner's defense[1]; 2) failed to move to dismiss the indictment; 3) failed to make a

---

[1]In this regard, petitioner states, in relevant part, that Smith was ineffective for "not investigating the verifiable witnesses which could give the true identity of the true and correct owner of the weapon in question." (Pet. Memo [#48] p. 8).  Of course, ownership of a weapon is largely irrelevant to a conviction under § 924(c). *See, e.g., U.S. v. Range*, 94 F.3d 614, 621 (11th Cir. 1996) ("Section 924(c)(1) punishes one who knowingly carries a weapon during and in relation to a drug trafficking offense. Ownership of the gun or the identity of the person who placed the gun in the car is irrelevant to the determination whether there has been a violation of section 924(c)(1).")

motion for a trial order of dismissal pursuant to Rule 29(c); and 4) failed to file a notice of appeal.  Petitioner makes these arguments specifically as to his conviction under 18 U.S.C. § 924(c), though not his conviction under 21 U.S.C. § § 841.  In short, petitioner now contends that he never possessed the firearm found in the apartment in connection with his drug trafficking activity.  Strangely, though, in his petition and supporting memorandum petitioner makes no mention of his agreement to waive his right to appeal or collaterally attack his conviction.

In response, respondent maintains that petitioner's claims are barred by his plea agreement, pursuant to the well-established rule set forth in cases such as *United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998) and *Unites States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993), which hold that a defendant's waiver of his right to collaterally attack his sentence or conviction is enforceable as long as the waiver was knowing and voluntary.

In his traverse/response to respondent's papers, petitioner merely states, in relevant part,  that his "plea, *as he recalls it*, had nothing to do with the issue at hand, which is a conviction that resulted from a jury trial finding." (Traverse [#54] p. 2) (emphasis added).  Petitioner does not allege or attempt to show that his plea agreement unknowing or involuntary.

## ANALYSIS

Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  It is well settled that

> *Strickland* 's test for ineffective assistance of counsel consists of two separate prongs, both of which must be satisfied in order to establish a constitutional violation. A defendant must show both (1) that defense counsel's performance "fell below an objective standard of reasonableness … under prevailing professional norms" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir. 2005) (*Citing Strickland*, 466 U.S. at 688, 694).  A substantial showing must be made on both of the two *Strickland* prongs. *Id*. When assessing the objective reasonableness of counsel's conduct under the first prong of the *Strickland* test, the court must "consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view," and must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 88.  With regard to the second prong of the *Strickland* test,

> [t]he burden is on the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  The level of prejudice [a petitioner] need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case.

*Id*. at 90-91.

It is well settled that where, as here, a petitioner has agreed to waive his right to appeal or collaterally attack his conviction or sentence as part of a plea agreement, such waiver is enforceable as long as the plea was knowing and voluntary. *U.S. v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) ("It is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable.")

(citations omitted).  In *Hernandez*, the Circuit Court further stated:

>  We have suggested that a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel. The rationale is that the very product of the alleged ineffectiveness cannot fairly be used to bar a claim of ineffective assistance of counsel. Of course, the refusal to apply such a waiver provision in these circumstances only allows appellate review of the constitutionality of the process by which the plea agreement was consummated. If the constitutionality of that process passes muster, the plea agreement's waiver would bar any consideration by the appellate court of issues that fall within the scope of that waiver.

*Id*. at 113 -114 (citations omitted).  In this regard,

> the mere assertion of ineffective assistance cannot allow a defendant to escape an agreement into which he knowingly and voluntarily entered. Such a result would "render the plea bargaining process and the resulting agreement meaningless," *United States v. Salcido-Contreras*, 990 F.2d [at] 53 . . . and would "significantly reduce, if not eviscerate, the incentive for the government to enter into plea agreements." See *[United States v.] Djelevic*, 161 F.3d at 107.

*Liz v. U.S.*, No. 02 CR. 1096(KTD), 06 CV. 329(KTD), 2006 WL 3771091 at*2

(S.D.N.Y. Dec. 22, 2006).

Applying these principles of law to the facts of the instant case, the Court finds, based upon its review of the plea agreement and the transcripts of the plea and sentencing in case 04-CR-6054, that petitioner's plea and agreement to waive his right to appeal or collaterally attack his conviction and sentence in case 04-CR-6002 were clearly knowing and voluntary.  Petitioner has made absolutely no showing to the contrary.  Accordingly, the Court finds that the waiver contained in the plea agreement is valid and enforceable, and that this collateral attack must therefore be denied.

CONCLUSION

Petitioner's application is denied, and this action is dismissed.  Pursuant to 28

U.S.C. § 2253, the Court declines to issue a certificate of appealability, since

Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated:       Rochester, New York
             January 12, 2007
                                        ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge